**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**LAKE CHARLES DIVISION**

| | |
|---|---|
| THE STATE OF LOUISIANA, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> JOSEPH R. BIDEN, JR., in his official capacity as President of the United States, *et al.*, <br><br> Defendants. | Case No. 2:21-cv-01074-JDC-KK |

**DEFENDANTS' NOTICE REGARDING INJUNCTION COMPLIANCE**

In opposing Defendants' motion for a stay pending appeal, Plaintiffs implied that the Department of Energy has violated the Court's order and asserted that Defendants, in their prior briefs, "consistently maintained that the Executive Branch does not rely on the SC-GHG Estimates to justify administrative actions." Pls.' Opp'n to Stay Mot., ECF No. 110, at 1. The Court's Memorandum Order denying Defendants' stay motion, ECF No. 111, seems to accept and rely upon those characterizations. Defendants and their counsel take seriously any suggestion that they have misrepresented facts or taken contrary positions. Accordingly, although Defendants recognize that this Court has already denied their stay motion (and are not asking for reconsideration of that ruling), they respectfully submit this Notice to explain, on the record, why there is no basis for these allegations.

## I. The Department of Energy did not violate the preliminary-injunction order.

At pages 18-19 of their opposition to Defendants' motion for a stay pending appeal, Plaintiffs implied that the Department of Energy (DOE) has violated the Court's order, or has at least exhibited some sort of "defiance" towards it. Pls.' Opp'n to Stay Mot. at 19. The Court's recent Memorandum Order similarly states that the Interim Estimates "are currently being used, despite this Courts' injunction," citing to the same Notice of Proposed Rulemaking from DOE that Plaintiffs had identified. Memorandum Order, ECF No. 111, at 1 n.3.

Respectfully, the quoted document confirms that the Department of Energy did *not* violate the Court's order. The language quoted by Plaintiffs and the Court appears in the agency's response to a commenter who "suggest[ed] that DOE should monetize the full benefits of emissions reductions and use the global estimate of the social cost of greenhouse gases." *Energy Conservation Program: Energy Conservation Standards for Variable Refrigerant Flow Multi-Split Air Conditioners and Heat Pumps*, 87 Fed. Reg. 11,335, 11,348 (Mar. 1, 2022). The agency's response to that commenter explained that, in the context of that particular proposed rulemaking, there was no occasion to estimate the social costs of greenhouse-gas emissions (global or otherwise). That was because other statutory considerations guided the agency's proposal, making an assessment of economic costs and benefits irrelevant. *See id.* ("[H]aving preliminarily determined that it lacks clear and convincing evidence as to the energy savings that would result from more-stringent standards, DOE has not conducted analysis as to the technological feasibility or economic justification of such

standards . . . ."). Accordingly, DOE noted that it "did not conduct an economic analysis or corresponding emissions analysis" at all, and that there was "no corresponding consideration of emission reductions or the associated monetary benefits." *Id.* The agency cannot have violated the injunction by explaining to a commenter why it was *not* using the Interim Estimates.

To be sure, in the course of explaining why it would *not* use the Interim Estimates in the context of that proposed rule, the agency also included the following general statement (quoted by Plaintiffs and the Court) about its use of the Interim Estimates: "DOE uses the social cost of greenhouse gases from the most recent update of the Interagency Working Group on Social Cost of Greenhouse Gases[.]" *Id.* That statement was accurate at the time it was drafted, and at the time that it was signed by the relevant policymaker at the Department of Energy—all of which happened no later than February 9, 2022, *see id.* at 11,354, before the Court entered its injunction. By the time it was actually *published* in the Federal Register, however, the statement had become inaccurate (or at least imprecise).

In any event, earlier this week, the agency signed and published a notice of clarification on its website (soon to be published in the Federal Register), in order to clarify its response to this comment, and to emphasize that it is complying with the Court's order. That notice of clarification is available on the agency's website, https://perma.cc/DPE5-VVKJ, and is also attached to this filing as Exhibit 1.

Unless and until Defendants obtain relief from the Court's order, Defendants' counsel will continue to work with the agency Defendants to ensure that any future

references to the Interim Estimates leave no doubt that Defendants are fully complying with their Court-ordered obligations.

## II. Defendants have consistently and accurately described the manner in which the Interim Estimates have been used.

Plaintiffs' opposition to Defendants' motion for a stay pending appeal began by suggesting that Defendants have litigated this case improperly:

> Before this motion was filed, Defendants consistently maintained that the Executive Branch does not rely on the SC-GHG Estimates to justify administrative actions. Now, however, they are singing a very different tune. Now they say enjoining the Estimates will have dramatic consequences and interfere with the entire Executive Branch's ability to function. Both assertions cannot be true.

Pls.' Opp'n to Stay Mot. at 1. In its recent order, the Court appeared to take Plaintiffs at their word. *See* Memorandum Order at 1 ("As noted by Plaintiff States, Defendants have repeatedly insisted that the Executive Branch does not rely on the SC-GHG Estimates to justify administrative actions.").

The key premise of Plaintiffs' criticism—which was unsupported by any citation—is incorrect. Defendants have never represented "that the Executive Branch does not rely on the SC-GHG Estimates to justify administrative actions." *Id.* Plaintiffs did not identify any example of such a representation because there is none.

Instead, Defendants' position has been clear and unchanged: (1) Plaintiffs have failed to carry their burden to demonstrate subject-matter jurisdiction by identifying any agency action that uses the Interim Estimates in a manner that causes them Article III injury; and (2) even if they had identified such an action, the only appropriate course would be to challenge that particular agency action through the

4

Administrative Procedure Act (or other review procedure that Congress has provided). And, in making that jurisdictional argument, Defendants expressly acknowledged (in their first substantive filing in the case) that agencies were expected to use the Interim Estimates:

> President Biden, to be sure, has made clear his desire that agencies use the Interim Estimates in monetizing the costs of greenhouse gases. But the Interim Estimates will typically be used only for internal Executive Branch purposes, and when they *are* relied upon to justify a substantive rule, they will rarely be outcome-determinative, and will generally be subject to notice and comment. Accordingly, any prediction as to the consequences of the Interim Estimates is "no more than conjecture" at this time. In any event, Plaintiffs can challenge future agency regulations when they are actually issued, as long as those regulations cause them some concrete, particularized, and actual or imminent harm.

Mot. to Dismiss, ECF No. 31-1, at 2 (citation omitted). That same position was consistently advanced in every substantive brief Defendants have filed in this case—including the stay motion itself. *See, e.g.*, Defs.' Mem. in Supp. of Stay Mot., ECF No. 108, at 8 ("Even if some of Plaintiffs' allegations might someday support Article III standing to challenge a particular final rule, issued by a particular agency, that was issued in reliance on the work product of the Working Group, the Court would still lack subject-matter jurisdiction because Plaintiffs' claims are not ripe, unless and until they challenge such a specific final rule."). And it does not in any way assume or imply that agencies have not or will not ever rely upon the Interim Estimates to justify some final agency action—to the contrary, Defendants explicitly addressed

what the litigation consequences would be "when [the Interim Estimates] *are* relied upon to justify a substantive rule[.]" Mot. to Dismiss at 2 (emphasis in original).

Finally, none of these arguments were inconsistent with (let alone "directly contradictory" to) the idea that the Court's injunction is having "dramatic consequences." Pls.' Opp'n to Stay Mot. at 1, 5. Among other reasons, that is because, for reasons explained in Defendants' stay motion, the injunction "deprives agencies of far more discretion than Executive Order 13990 ever did," Defs.' Mem. in Supp. of Stay Mot. at 24, and has "delayed or halted" agency actions that merely "in some way *referenced* the Interim Estimates" even though "they had not relied upon those estimates as a basis for the agency action at issue," *id.* at 25. *See also id.* at 20-21, 23.

Dated: March 10, 2022									Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

BRANDON BONAPARTE BROWN
United States Attorney

ERIC WOMACK
Assistant Branch Director
Federal Programs Branch

/s/ *Stephen M. Pezzi*
JULIA A. HEIMAN
STEPHEN M. PEZZI
CODY T. KNAPP
Trial Attorneys
United States Department of Justice
Civil Division
Federal Programs Branch
1100 L Street NW
Washington, DC 20005
Phone: (202) 305-8576
Email: stephen.pezzi@usdoj.gov

*Attorneys for Defendants*