# United States Court of Appeals
**FIFTH CIRCUIT**
OFFICE OF THE CLERK

**LYLE W. CAYCE**
**CLERK**

**TEL. 504-310-7700**
**600 S. MAESTRI PLACE,**
Suite 115
**NEW ORLEANS, LA 70130**

March 16, 2022

MEMORANDUM TO COUNSEL OR PARTIES LISTED BELOW:

   No. 22-30087   State of Louisiana v. Biden
                     USDC No. 2:21-CV-1074

Enclosed is an order entered in this case.

                      Sincerely,

                      LYLE W. CAYCE, Clerk

                      By: _____
                      Melissa V. Mattingly, Deputy Clerk
                      504-310-7719

Mr. Cody T. Knapp
Mr. Matthew F. Kuhn
Mr. Justin Lee Matheny
Mr. Tony R. Moore
Ms. Elizabeth Baker Murrill
Mr. Stephen John Petrany
Mr. Stephen Michael Pezzi
Mr. Thomas Gary Pulham
Mr. Michael S. Raab
Mr. Jeffrey Eric Sandberg
Ms. Lindsay Sara See
Mr. Joseph Scott St. John

# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit
**FILED**
March 16, 2022
Lyle W. Cayce
Clerk

No. 22-30087

THE STATE OF LOUISIANA, *by and through its Attorney General, Jeff Landry*; THE STATE OF ALABAMA, *by and through its Attorney General, Steve Marchall*; THE STATE OF FLORIDA, *by and through its Attorney General, Ashley Moody*; THE STATE OF GEORGIA, *by and through its Attorney General, Christopher M. Carr*; THE COMMONWEALTH OF KENTUCKY, *by and through its Attorney General, Daniel Cameron*; THE STATE OF MISSISSIPPI, *by and through its Attorney General, Lynn Fitch*; THE STATE OF SOUTH DAKOTA, *by and through its Governor, Kristi Noem*; THE STATE OF TEXAS, *by and through its Attorney General, Ken Paxton*; THE STATE OF WEST VIRGINIA, *by and through its Attorney General, Patrick Morrisey*; THE STATE OF WYOMING, *by and through its Attorney General, Bridget Hill*,

*Plaintiffs—Appellees*,

*versus*

JOSEPH R. BIDEN, JR., *in his official capacity as President of the United States*; CECILIA ROUSE, *in her official capacity as Chairwoman of the Council of Economic Advisers*; SHALANDA YOUNG, *in her official capacity as Acting Director of the Office of Management and Budget*; KEI KOIZUMI, *in his official capacity as Acting Director of the Office of Science and Technology Policy*; JANET YELLEN, *Secretary, U.S. Department of Treasury*; DEB HAALAND, *Secretary, U.S. Department of the Interior*; TOM VILSACK, *in his official capacity as Secretary of Agriculture*; GINA RAIMONDO, *Secretary, U.S. Department of Commerce*; XAVIER BECERRA, *Secretary, U.S. Department of Health and Human Services*; PETE BUTTIGIEG, *in his official capacity as Secretary of Transportation*; JENNIFER GRANHOLM, *Secretary, U.S. Department of Energy*; BRENDA MALLORY, *in her official capacity as Chairwoman of the Council on Environmental Quality*; MICHAEL S. REGAN,

*in his official capacity as Administrator of the Environmental Protection Agency*; GINA MCCARTHY, *in her official capacity as White House National Climate Advisor*; BRIAN DEESE, *in his official capacity as Director of the National Economic Council*; JACK DANIELSON, *in his official capacity as Executive Director of the National Highway Traffic Safety Administration*; UNITED STATES ENVIRONMENTAL PROTECTION AGENCY; UNITED STATES DEPARTMENT OF ENERGY; UNITED STATES DEPARTMENT OF TRANSPORTATION; UNITED STATES DEPARTMENT OF AGRICULTURE; UNITED STATES DEPARTMENT OF INTERIOR; NATIONAL HIGHWAY TRAFFIC SAFETY ADMINISTRATION; INTERAGENCY WORKING GROUP ON SOCIAL COST OF GREENHOUSE GASES,

*Defendants—Appellants.*

---

Appeal from the United States District Court
for the Western District of Louisiana
USDC No. 2:21-CV-1074

---

Before SOUTHWICK, GRAVES, and COSTA, *Circuit Judges*.

PER CURIAM:

    IT IS ORDERED that the opposed motion of Appellants for stay pending appeal is GRANTED.

    When federal agencies promulgate regulations or take other agency action with economically significant effects, they conduct a cost-benefit analysis. This has been done since the Carter administration, although presidential oversight of regulatory action through a systematic review process began as early as the Nixon administration. In 1993, President Clinton issued Executive Order 12866 which, among other things, mandates the prepublication review process for economically significant regulations. Exec. Order No. 12866, 58 Fed. Reg. 51,735, 51,736, 51,741 (Sep. 30, 1993). EO 12866 also states "[e]ach agency shall assess both the costs and the benefits of the intended regulation and, recognizing that some costs and

2

benefits are difficult to quantify, propose or adopt a regulation only upon a reasoned determination that the benefits of the intended regulation justify its costs." Later administrations retained EO 12866's commitment to cost-benefit analyses and strengthened it with additional directives or guidelines for regulatory analysis.

In 2003, the Office of Management and Budget (OMB) issued Circular A-4 to provide guidance to agencies on how to conduct the cost-benefit analysis implemented by EO 12866. *See* OMB Circular A-4 (Sept. 17, 2003). Compliance with Circular A-4 is not required by any statute or regulation and is not binding on any agency.

In conducting cost-benefit analyses, agencies consider the impact of the emissions of greenhouse gases. The impact of these emissions on various factors like health, agriculture, and sea levels, can be quantified into dollar amounts per ton of gas emitted—i.e., the Social Cost of Greenhouse Gases (SC-GHG).

To encourage consistency in determining SC-GHG, in 2009, President Obama instituted the Interagency Working Group (IWG) to develop a method for quantifying the costs and effects of emissions. In 2010, the IWG developed a method to quantify GHG emissions into social costs estimates based on peer-reviewed frameworks.

In 2017, President Trump disbanded the IWG and its method for quantifying SC-GHG in Executive Order 13783. Exec. Order No. 13783, 82 Fed. Reg. 16,093, 16,095 (March 31, 2017). That order still contemplated, however, that agencies would continue to "monetize the value of changes in greenhouse gas emissions resulting from regulations" and that estimates would be consistent with Circular A-4 (to the extent permitted by law). 82 Fed. Reg. 16,096.

No. 22-30087

In January 2021, President Biden signed Executive Order 13990 and reinstated the IWG to advise him on the SC-GHG. *See* Exec. Order No. 13990, 86 Fed. Reg. 7,037, 7,040, § 5(b)(ii)(A) (Jan. 20, 2021). The IWG was also directed to develop new estimates for the SC-GHG, and until those new estimates are published, to develop Interim Estimates within 30 days, as appropriate and consistent with applicable law. Pursuant to EO 13990, agencies must use the Interim Estimates when they conduct cost-benefit analyses for regulatory or other agency action. The IWG published the Interim Estimates in February 2021. The Interim Estimates are the same as the SC-GHG estimates from 2016, adjusted for inflation.

The Plaintiff States sued the United States' Government Defendants in April 2021 to preemptively challenge the Interim Estimates. They claim the Interim Estimates will lead to increased regulatory burdens when agencies conduct cost-benefit analyses. The Plaintiff States therefore brought several challenges to Interim Estimates pursuant to the Administrative Procedures Act (APA). The Plaintiff States' claims are premised *solely* on the broad use of the Interim Estimates. They do not challenge any specific regulation or other agency action.

In February 2022, the district court entered a preliminary injunction enjoining the Government Defendants from using, in any manner, the Interim Estimates. The Government Defendants move to stay the injunction pending appeal arguing, among other things, the Plaintiff States lack standing, their claims are not ripe, and the Interim Estimates are not final agency action under the APA. Because we conclude the Government Defendants have made a strong showing that they are likely to succeed on the merits, and the balance of harms to the parties favors granting the stay, we GRANT the Government Defendants' motion.

4

No. 22-30087

Whether to enter a stay is left to the court's discretion. *See Nken v. Holder*, 556 U.S. 418, 434 (2009). That discretion is bound to four factors: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Id.* (citation omitted). The first two factors "are the most critical." *Id.*

The Government Defendants are likely to succeed on the merits because the Plaintiff States lack standing. The Plaintiff States' claimed injury is "increased regulatory burdens" that *may* result from the consideration of SC-GHG, and the Interim Estimates specifically. This injury, however, hardly meets the standards for Article III standing because it is, at this point, merely hypothetical. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992) (stating "injury in fact" is "an invasion of a legally protected interest which is (a) concrete and particularized . . . and (b) actual or imminent, not conjectural or hypothetical" (internal quotation marks and citations omitted)); *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339–40 (2016) (requiring an injury to actually exist and affect a plaintiff in a "personal and individual way"). The Government Defendants are also likely to succeed in showing that the Plaintiff States have failed to meet their burden on causation and redressability. The increased regulatory burdens the Plaintiff States fear will come from the Interim Estimates appear untraceable because agencies consider a great number of other factors in determining when, what, and how to regulate or take agency action (and the Plaintiff States do not challenge a *specific* regulation or action). *See Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 411–13 (2013) (assuming claimed injury was imminent pursuant to *Lujan* but noting redressability was absent because there was a number of other methods to inflict the same injury which were not challenged in the case).

5

No. 22-30087

The Interim Estimates on their own do nothing to the Plaintiff States. So we discern no injury that would satisfy Article III at this stage. *See Summers v. Earth Island Inst.*, 55 U.S. 488, 493 (2009) (concluding organizations lacked standing because among other things, the plaintiffs were not the subject of the challenged regulations). The Plaintiff States' claims therefore amount to a generalized grievance of how the current administration is considering SC-GHG. And that fails to meet the standards of Article III standing. *See Lujan*, 504 U.S. at 568 ("[R]espondents chose to challenge a more generalized level of Government action," instead of "specifically identifiable Government violations of law," which is "rarely if ever appropriate for federal-court adjudication." (citation omitted)).

The Government Defendants have shown they will be irreparably harmed absent a stay. The preliminary injunction halts the President's directive to agencies in how to make agency decisions, *before* they even make those decisions. It also orders agencies to *comply* with a prior administration's internal guidance document that embodies a certain approach to regulatory analysis, even though that document was not mandated by any regulation or statute in the first place. The preliminary injunction sweeps broadly and prohibits reliance on § 5 of EO 13990, which creates the IWG, a group created to advise the President on policy questions in addition to creating the Interim Estimates. It is unclear how the Plaintiff States' qualms with the Interim Estimates justify halting the President's IWG. All of this effectively stops or delays agencies in considering SC-GHG in the manner the current administration has prioritized within the bounds of applicable law. The preliminary injunction's directive for the current administration to comply with prior administrations' policies on regulatory analysis absent a specific agency action to review also appears outside the authority of the federal courts. We therefore find the Government Defendants are irreparably harmed absent a stay of the injunction. *Cf. E.T. v. Paxton*, 19 F.4th 760, 770

No. 22-30087

(5th Cir. 2021) (concluding state was irreparably harmed when an injunction prevented the state from carrying out public policy and enforcing its own laws).

On the other hand, a stay of the injunction will impose minimal injury on the Plaintiff States. In consideration of this factor, the maintenance of the status quo is important. *See Dayton Bd. of Educ. v. Brinkman*, 439 U.S. 1358, 1359 (1978). The Interim Estimates were published in February 2021. This lawsuit was filed in April 2021. The Plaintiff States moved for a preliminary injunction in July 2021. And the preliminary injunction was entered in February 2022. By the time the preliminary injunction was entered, the Interim Estimates had been in place for one year. The status quo at this point is the continued use of the Interim Estimates. *See E.T.*, 19 F.4th at 770 (concluding status quo was leaving state order in effect because it had been in effect for nearly four months and plaintiffs alleged a tenuous and speculative injury). And because the claimed injury, increased regulatory burdens, has yet to occur, the continued use of the Interim Estimates will not harm the Plaintiff States until a regulation or agency action is promulgated from the *actual* use of the Interim Estimates. To the extent the agencies will use, or are using, the Interim Estimates in reaching a specific final agency action, we discern no obstacle to prevent the Plaintiff States from challenging a specific agency action in the manner provided by the APA.

In sum, the Plaintiff States' claims are based on a generalized grievance of the use of Interim Estimates in cost-benefit analyses of regulations and agency action. But their claimed injury does not stem from the Interim Estimates themselves, it stems from any forthcoming, speculative, and unknown regulation that *may* place increased burdens on them and *may* result from consideration of SC-GHG. We conclude the standing inquiry shows the Government Defendants' likelihood of success

7

No. 22-30087

on the merits in this appeal, and the other factors, including the public interest, favor granting a stay of the injunction.

The Government Defendants' motion to stay the preliminary injunction pending appeal is GRANTED. The district court's preliminary injunction entered on February 11, 2022 is STAYED pending this appeal.